Case number 24-1584, Daniel Welch v. Heart Truss and Engineering Corp Argument not to exceed 15 minutes per side. Mr. Flynn, you may proceed Good afternoon and may it please the court. My name is Opposing counsel just a moment to get settled if you would Hey, please the court. My name is Keith Flynn. I'm an attorney with Miller Cohen PLC and I represent plaintiff appellant in the matter at hand As John Adams once wrote Representative government and trial by jury are the heart and lungs of Liberty Without them we have no other fortification against being ridden like horses Fleeces like sheep work like cattle and fed and clothed like swine and hounds So much of employment litigation is inherently fact-intensive Context is important. The surrounding circumstances are important The in the right to trial by jury is both the sacrosanct Safeguard against the law being perverted But it's also an important protector for the truth Now Daniel Welch was a truck driver who was demoted on or about March 26th 2021 to a more physically intensive job in production making less money This punishment was handed down on a disciplinary form Entitled a ridden warning by the director of manufacturing Tom Gutseson This Note this disciplinary note accused. Mr. Welch of violating article 3 Quote rules relating to attitude while on the job What was mr. Welch's attitude? He complained to another manager Brian Johnson About the employers failure to pay for a surgery that he needed related to an on-the-job injury It's important to note that the trial court in this case found that there was a genuine issue of material fact as to The wrongful demotion and that was mere pretext. There's enough evidence to support this mere pretext I'm sorry, the demotion claim was resolved. That's correct. Yes It's important to note though that Mr. Welch had the facts from what happened with the wrongful demotion Bleed in and cannot just be ignored in regards to the wrongful termination that occurred a mere two weeks later a mere two weeks later plaintiff was discharged from his employment and the rationale literally the morning of Mr. Welch's termination Mr. Welch was injured on the job doing this physically more intensive job in production Here you have a truck driver. He's got a bad knee and They intentionally moved him out into the yard to perform production work lifting pulling Pushing standing on his feet all day long Performing this more intensive job That job required climbing I thought it was client I thought was he was climbing he was having to climb in the other job and they thought that was He too difficult with his knee conditions. They moved him to a different job He he was required to do some climbing not very much climbing You can't do climbing any climbing seems to be a problem But he could do climbing the climbing wasn't an issue is long-term standing long-term walking one long to term running In addition to that making sure to move around from time to time to ensure that he's comfortable So it's not just all the weight is resting on one spot That's what his restrictions Implied nor did he ever request to move out of the position of truck driver? In fact if anything he begged this claim was resolved right the demotion claim was resolved Yes, the demotion can The demotion claim was resolved You can't just interpret the wrongful termination claim without considering the facts Underlying the wrongful demotion were there any did your client do anything wrong? Do you do anything wrong on the job? He said that he did not do anything wrong. He denied what it was that they were accusing him of doing They accused him again backing up a second the day of his wrongful termination. He's injured I don't but can I set you a different question. Did you do anything wrong? What's this case about graffiti, right? Well, no, I actually we think it's about his rights under workers compensation in the ADA We think that's just mere pretext and there's very strong evidence of support pretty well just so can I set but? The company's product was being defaced The best case scenario is that some employee was drawing eyes on the company's property that was being sent out into the viewing public Worst case scenario is they were drawing breasts and your client basically admitted to doing this and said what's the big deal? No, we didn't admit to doing it Wasn't that what the wasn't that when he was interviewed on the yard? Didn't the his supervisor to ask him and the first employee said no and your client stepped up and said I did it What's what's the big deal or something along those lines? No, he denies ever saying they denied that meeting even taking place according to mr. Welch's testimony your honor He literally the individual Tim Oberlin the supervisor that you're referencing Walked out to a group of production employees showed them the pictures and said don't let it happen again happen again That there'll be problems if this happens again, and then he walks back in that's the testimony of the plaintiff There's a dispute of fact It's not for the judge in the trial court to determine a dispute of fact when you have the dispute of fact Exclusively on the one side your clients testimony. I mean other than your clients saying it didn't happen There's a fair bit of testimony their side saying this is exactly what happened Wixon's testimony Oberlin Gustafson and on the other side, it's just your client saying none of this happened. No, that's not true your honor The testimony on the other side is contradictory One person says one thing happened another person said another thing happened The only two the only things that Oberlin and The line supervisor Wixon could agree on quite frankly no one ever asked the plaintiff whether or not He'd spray-painted graffiti on the trusses That's the one thing that if you look at both of their testimonies neither of them asked that question nine neither of neither of them heard Plaintiff admit to spray-painting graffiti on the trusses I read the record as him saying up speaking up and said that he what's the big deal that he did it and asking What's the big deal? No, he didn't say he did it though. Your honor. He said he overheard something according to Oberlin Oberlin said that he said what's the big deal? He that's a question first off is not a statement second off No, he never did admit that. He was the one who was spray-painting on the trusses the graffiti Instead and then if you look at Wixon's account of that particular meeting again plaintiff said it didn't even happen if you look at Wixon's Statement on what had happened. He said that all he overheard was when Oberlin had asked Who here has been spray-painting on the trusses? Well, there was mr. Welch who said yeah, I'm doing it But does the record also show that Oberlin then went to Gustafson said something to the fact that Dan Admitted that he drew on the Trust trusses, but it's no big deal Gustafson then went to his supervisor and said that's a violation of company rule 28, I think and That Welch would be Discharged there's no dispute about that. Is there in the record? Yes, there is. Yes. Yeah So what mr. Oberlin said according to mr. Gustafson? Okay was that I talked to I was asking around and Mr. Welch said that he had been spraying some things and the key word here some things on trusses when I asked mr Gustafson what Oberlin meant by that. He said I don't know I asked mr. Gustafson Well, did you ask what he meant by it and his response was no, why should I? That was the testimony Because What's your best case for the point that that would be an inadequate investigation on the part of the employer So the best case on that your honor would be I Believe that I cite to primarily There's a few Yazian is a very good case Deals with an employer who only relied on one sole managerial A Managerial employee and what that person had said without ever Help me understand how you distinguish that because that one did have another component that Upon hearing it that employee had then written a rebuttal letter and had complained about discrimination So there was something in the record that that employee had done Do you think that doesn't matter to this case or do you think there is? Equally important evidence in this case that would support your client's position well both So the Yazian case that dealt with the manager and Being trusted by another manager to be the sole Input as to whether or not the individual gets terminated There was no conversation with his co-workers or past managers before the decision was made to terminate And the court said that that was insufficient to constitute a reasonable investigation Then in addition to That there's you don't think that case turned on the fact that the employee had immediately objected With a rebuttal letter and said you're discriminating against me I'm trying to get the parallel to see what case what factual thing do you have? That would have shown that sort of putting this employer on notice that you are wrong To treat me that way so The first off he never had that opportunity to be heard He was terminated before they'd already made up their mind in fact, I believe that Gustafson's testimony was that his mind Was always termination that he was always going to be terminating him even though the collective bargaining agreement required him to take into account the the all of the circumstances the frequency of the violations The nature of the conduct and he didn't take into account any of that as part of his investigation didn't ask the plaintiff didn't Doesn't this case ultimately go off on the honest belief rule, which is I would concede a problematic Legal doctrine, but it is in fact a legal doctrine. So what is it that you would say is The best evidence that That is pure pretext. I mean, I know you cite Caudill, but Caudill is a prima facie case You made the prima facie case everybody agrees on that. We're at the pretext stage So what is it at the pretext stage? What is your best evidence? To to show that this was simply pretext. It was not in fact The reason the fact or the reason for what they did Well two weeks prior to his termination the guy who made the decision to terminate him literally said on a recording Brought up the fact that he had this litigation. I know what your problem is. I know what's going on here And then demoted him on the spot Because of that conversation they had regarding protect activity. That's one part, but then the day of Mr. Gustafson the same decision-maker sees him after he's been injured goes up to him and Says with a look of disgust on his face and with incredulity, what's wrong with you and Then just walks away silently then in terms of anything in relation to Pretext, I mean there's three ways you can show pretext The only one that we're honest belief even comes up is a basis It has a basis in fact the reason that was offered. There's two others as well including the sufficiency of the reason to warrant termination as well as Whether or not the it was actually motivated by whether or not the reason itself Actually motivated the decision to terminate and here we have All of the evidence from We have all the statements that were made by Gustafson as to As to his animus his motivation, so clearly there's evidence that there's another motivation happening in terms of the sufficiency I'm mad at you because you're mad at me, then he goes on to say It was a shout I mean long conversation that was kind of a shouting match And his answer is I'm mad at you because you're mad at me. Tell me how that shows animus. He then explained why He believed that my client was mad at him. He explained that it was because of his workers compensation claim Thank you Good Afternoon may it please the court. My name is Darice Weber, and I'm appearing on behalf of the Apple e heart trust This case really presents two questions and your questions have already touched on the critical issues The two questions really are you know how much evidence? Does the appellant really need to get to a jury on pretext and the second question is did he produce that evidence here? The first question is answered by our various case law and in this case with the few exceptions There's not a lot of dispute about much of the case law much of the case law is established and both parties are relying on many of the same cases The second question is answered by the record and the answer to that question is no And one of the reasons for that answer goes back to this honest belief rule And it also goes back to the fact that there's just overwhelming evidence That the appellant Did exactly what he was terminated for and that he was terminated for choice because he did that well What is the overwhelming evidence your opposing counsel says absolutely not I did not saying that That's all you've got and that's not good enough sure and I'm gonna run you right through it right now So there's a lot of it. Let me start with the beginning so first of all what we have in this case is we have On April 14th the day before the termination The owner's wife gets an email Obviously complaining about these pictures She sends it to Tom Gustafson and says our someone has too much time on their hands you need to investigate this This is April 14th Tom Gustafson testifies that this comes to him after the first shift The appellant worked on the first shift so Tom Gustafson starts his investigation by going to the second shift supervisor He shows it the second shift supervisor. It says do you know anything about this? Second shift supervisor says I don't my folks on second shift aren't doing it, but I have seen it done So now Tom Gustafson knows he has to go start his investigation the next morning with the first shift Tom Gustafson calls in Tim Oberlin who is his lead guy for the first shift in the department that the Appellant is working in and says Tim. Please go down and see if you can find out who is doing this Tim Oberlin goes down to the yard He decides he's gonna start with Ryan Wixon because Ryan Wixon is the yard leader He goes up to Ryan Wixon who happens to be working in very close proximity to the appellant Dan Welch he poses the question to Ryan Wixon Ryan Do you know who is painting these unauthorized unauthorized graffiti on the trusses? Ryan says it's not me. I don't know Mr. Welch overhears it steps in and says it's me. What's the big deal? That evidence is supported by Tim Oberlin's testimony and it's supported by Ryan Wixon both of whom heard it But here's what's even more interesting about this judge There's a little fact that the plaintiff's brief doesn't really seem to get it and it's a little nuance But it's it's very important when the plaintiff is brought in to be terminated He is given the termination slip that is in the record that says violation of shop rule 28 defacing company property That is all that says plaintiff testified that he didn't have any conversations with his union folks before he gets in this room and Yet when he gets in this room to be told he's terminated. What is his union rep say according to mr. Welch? According to mr. Welch His union rep says are you really going to terminate this guy for painting smiley faces? so step back and ask yourself if you've been given a notice of discharge that only says shop rule 28 and defacing company property How do you know? That the substance of the defacing company property is that you were doing our work There's only one way to know and that's from mr. Welch because mr. Welch And his union rep we're going this meeting together. So that is our overwhelming evidence Your honor, and I think it is overwhelming in this case. And I also think that it's it's instructive I think when I look at these cases, I try to ask myself a couple things My first question is what is out there that can support the plaintiffs or the appellants theory of pretext? And I'm going to come back to that in a moment. And then I ask myself What do you usually see in pretext cases? And is that here? And the answer to that question in this case is no you don't have a shifting rationale of the employer The employer has consistently maintained that mr Welch was terminated for violating shop rule 28 defacing company property Painting unauthorized artwork on the trusses that has never changed You don't have the employer violating a policy the appellant says we did but we didn't The appellant says we violated policy because shop rule 28 wasn't a mandatory first-time discharge He's right on the first part. It wasn't a mandatory for first-time discharge. He's wrong on the second part It doesn't make it a violation of our policy when we do discharge on the first time because shop rule 28 Allowed for discharge on the first time. So why did we discharge on the first time both? Tom Gustafson and Tim Oberlin give us the answer to that question and the answer in a nutshell is that This is a very bad look for the company. This is going out to customers. This is going on the road This is a bad look. So that is why we discharge on the first time The question becomes then why didn't he contact Welch himself? I'm sorry Why didn't why didn't an investigation into a short one that just calls that person in and says Did you do this? Sure and Tom Gustafson gave you the answer to that and his answer is I didn't have to ask him because he confessed So he didn't confess to Gustafson. He did not confess to Gustafson, correct But he confessed to Tim Oberlin and in front of Ryan Wixon both of whom confirmed it So judge if you want to have a perfect investigation if you want to do everything an exhaustive inquiry I will acknowledge that you would want to ask that question But the test isn't a perfect inquiry and the test is not an exhaustive inquiry It is a reasonable inquiry and I don't think reasonable minds can differ or disagree on this record today That what my client did was very reasonable. He had Someone saying he admitted to it. I think under those circumstances This is absolutely reasonable to do that And then I also think it's reasonable that you need to also consider one other fact the plaintiff had been previously Terminated for prior conduct and filed a grievance and he got his job back. So why is that important? Because plaintiff files a grievance here, but doesn't pursue it. He does not pursue his grievance Ask yourself why he does not pursue that So, you know the common-sense question. I think that we're always asking ourself in these cases is Did the employer really terminate the employee for the stated reason and I don't think there's anything In this case that tells us that he didn't The plaintiff wants the effluence wants to talk about, you know, multiple different things and you touched on and I think you touched on you know very Wisely the recorded conversations. I've read those several times, right? I mean, I suppose I could have objected because the plaintiff's counsel transcribed them But I didn't because there's nothing in those conversations that helps the plaintiff's case In fact, it shows the reason why my client was handling the appellant in the manner in which he did There's absolutely no claims that there was a reference to being in litigation with Sure because the what's going on is the Appellant, mr. Welch is continually complaining about the fact that according to mr. Welch in 2017 he hurt his knee while getting down from a truck in Ohio actually, and According to mr. Welch. He was denied workers comp for that injury So what mr. Welch is complaining about is in this entire recorded conversation. He keeps going back to 2017 and what my client is saying? Yes. I know you had litigation. I don't necessarily know what happened, but I do know it That's not animus. That's just the fact that you know, he's aware of the fact that there was litigation out there And in fact another point with respect to the plaintiff wants to say that you know we did something because of work comp claims or because of Some disability two quick points on that the plaintiff by his own admission Had a work comp injury in 2020 where he had a bad ankle injury. He had surgery He was off for multiple months plaintiff's own testimony. I had zero issues with that work comp claim. They handled everything second point is That Now I lost my track of what I was going to say in my second point, but I'll come back to that in a moment So the plaintiff, you know, the recordings do not show any any animus Plaintiff then says he wants to talk about timing and timeline and I need to make two quick points here before I forget Timing I made this point in my brief But I want to emphasize it again the plaintiff's facts are somewhat wrong and the somewhat part is that the plaintiff wants to say the appellant wants to say he is Client had this clean record Disciplinary record his client did not have a clean record and he states that you know with no citation to the record He states that the client had no discipline in the months before the 2017 injury and my only point in raising this is because it should not be considered because he has no citation to the record and There's a very good reason why he has no citation to the record and that's because in fact there were discipline shortly before that 2017 injury So I would ask if this court were inclined to consider that statement I would like to correct the record because that is not an accurate statement. I thought the Con the union contract required that those be removed from a file after a year a certain It does your honor and that's why I'm not referencing the ones that are 2011 12 13 14 15, but in 2017 which would not have been subject to that's Union Rule 34 There were two at least and arguably a third one So I would simply state that that evidence shouldn't be considered if it is I would like to correct the record because that's not accurate Temporal proximity, let me touch on this for a moment, you know with respect Are there two shifts or three shifts at the plant? There are two shifts. Yes, so He goes to the second shift first, right? That's right. No, I don't know how many people are on a shift. Is it 100 or 20 or no, that's a good question I don't know the exact number but it is a smaller shift. Okay, so no one there confesses to this, correct? He goes to the other shift and your evidence says that Welch confesses to it, correct? Has there been any one other I mean this feels seems undeniable that the defacing was happening Has there been any evidence that anyone else was doing the defacing that it wasn't Welch or was the suspect still out there? Is there any evidence in the record that suggests it was someone else, right? So we don't have any evidence that suggests it was someone else at that time However, there certainly has been other instances of graffiti that my client hasn't been able to determine who it was But for example in 2022, it wasn't graffiti on the trusses, but they also determined who it was and those two folks were fired So around this time we didn't have the issue once. Mr. Welch was terminated But it would be it would not be correct on my part to say that there weren't prior issues as Tom Welch as Tom Gustafson Testified to that. Yes, there have been other issues, but I can't fire someone if I don't know who the culprit is So I hope I hope that answers your question Anyway the temporal proximity point I just want to make you know in the appellant's brief They say that you know temporal proximity can can be evidence of pretext But as we know from you know, the the cyber Donald versus cyber case Temporal proximity alone cannot be the pretext It has to have something with it. And in this case, we don't have we don't have anything to go with it as well I said I was gonna touch on some of the Things that you usually see in cases as evidence of pretext and I think I mentioned a few I'm not sure I mentioned all the ones I want to mention a clean record for your discipline He doesn't have that here a similarly situated person treat it differently. He doesn't have that here He alludes to a gentleman who spray-painted a forklift and that did happen the reason that gentleman was only suspended is because the forklift stays on the company premises and doesn't go out to where the Customers and others can see it doesn't make it right It was just in the balance not deemed to be as much of a problem for the company a Failure to follow company policy. We don't have that here Remarks by a decision maker tending to show that the guy was signaled out for discharge for an impossible reason We don't have that here. We have Undisputed testimony by Tom Gustafson that he had no idea It was mr Welch doing this at the time he made the decision that whoever was doing it was going to be terminated That testimony is bolstered and unrebutted by Tim Oberlin who said I had no idea this was Dan Welch They didn't know it was Dan Welch by the time they had made their decision that the culprit was going to be fired Other appellant makes an argument that our reasons for the discharge have subtly changed over time And that's not correct as I touched on we've always maintained. It was a violation of rule 28 defacing company property Improperly painting entrusts the appellant argues that Tom Gustafson can't even really say what the appellant did That's not correct. Tom Gustafson made it clear that I knew he confessed He doesn't waiver from that Tom Gustafson says I I don't know whether he painted on this picture or that picture when you were looking at various pictures in the deposition, but I knew he confessed So Summing up finally, let me get to the honest-belief rule To the extent that even if you had a factual issue with respect to whether the plaintiff did this action if my Client's decision is based on a reasonable investigation and an honest belief that mr Welch did this then my client is protected under the honest-belief rule I don't think I've seen anything that can show that my clients belief about mr. Welch being the culprit was anything other than honest I don't think we can suggest I Don't think any reasonable jury could conclude with the various steps my client took that it didn't perform a reasonable Investigation you may say it wasn't exhaustive, but I don't think you can say it wasn't reasonable. I see my time is up Thank you I Didn't have to be perfect. It never happened meaning the investigation never talked to my client never talked to Oberlin to get a statement from Oberlin didn't talk to Wixson to get a statement from Wixson didn't happen Investigation also didn't happen even though the violations continued after my client was terminated Investigation didn't happen even though it had been happening before my client was even working in production again He was only there two weeks So that's a whole lot of graffiti come out two weeks Actuality at least one of the emails with the pictures attached was after the date of its termination. It was actually on April 22nd No investigation was taken because now it's not a big deal apparently It there's testimony from the managers knew After he was discharged I'm sorry were the pictures made After mr. Welch was discharged there's Actually made before so there was one set of pictures that Would have been received by Gustafson prior to his discharge, but then he received another set of pictures that Happened after his termination that were taken after his termination or that mr. Gustafson received After so the pictures after would have been received after but it was still have we're still They were still taken before mr. Welch was barred from the site for example actually Gustafson didn't didn't know didn't even ask Didn't try to track it down. These are pictures where there are stacks of trusses with job numbers on them Literally ordinarily if there's an issue with the product what Gustafson Testified to was that he'd go to the records from that day from that particular shift And he could easily figure out which production employees were working on that stack he testified They never even bothered to do that didn't do it before my client was Terminated as to this issue relating to the smiling faces on the trusses But he did do it Ordinarily when it came to issues relating to the quality of the product, and he most certainly didn't do it after Did you do that during discovery to link the facing to somebody else your point is it could have been someone else? I guess during discovery. Did you ask these questions to say well the time stamp was here So it could have been someone else Gustafson's testimony was he doesn't know when it was and most certainly Gustafson testimony was he did not know that whether any of the pictures Were something that mr.. Welch has actually done. Well. I mean his point would be that it was Welch said he did it during this other meeting, but my point was just did you Counterprove there was someone else who did this Maybe that's not your obligation, but you're you're presenting evidence that suggests Maybe someone else is doing the graffiti and did you I was wondering during discovery if you'd developed that theory at all They destroyed the records from that day in particular Apparently they have a destruction policy where they destroyed those records every 30 days, and they didn't keep those records so What? The answer to my question is no although you're saying you you're blaming the employer for not Preserving information that would have allowed you to do that's correct, but also literally the testimony from Seth Weir who remained employed there until 2022 for by an affidavit said it was still happening Once every month even while he was employed there. He would see this sort of graffiti on the trusses, so it's clear it wasn't Something that mr.. Welch Was the one who was doing it in terms of his what he said or did not say in terms of a confession It's clear that what? Mr. Gustafson did not do was take a statement from Oberlin to Describe what it was the scope of what it was they confessed to so now you have conflicting You have conflicting deposition testimony and conflicting Statements In the form of affidavits from the two managerial witnesses in these conflicts by necessity Generate a genuine issue material fact Are there any other questions that I could address your honors? Thank you, thank you both for your good briefing and for your arguments and the case will be taken under advisement